OPINION
{¶ 1} Appellant, Clifton D. Smith, Sr. ("Smith"), appeals the judgment entered by the Trumbull County Court of Common Pleas. Smith was sentenced to eleven months in prison following his conviction for trafficking marijuana.
 {¶ 2} Smith operated a computer repair business in Niles, Ohio. He would buy old computers from businesses or government agencies. Then, he would refurbish the computers and resell them. However, the police received complaints suggesting there was drug activity occurring at the store.
 {¶ 3} Detective Fred Raines of the Trumbull County Sheriff's Office went to Smith's computer business with an undercover informant to attempt to purchase drugs. Officer James Robbins of the Niles Police Department accompanied Detective Raines and the confidential informant to the computer business. However, he waited in the car and did not enter the building. Officer Robbins and Detective Raines were assigned to the Trumbull County Drug Task Force. During the time Detective Raines was in Smith's store, he was wearing a listening device. This consisted of an apparatus, which resembled a pager, being worn on his belt. The device transmitted the conversations to a patrol car parked outside, where Officer Robbins was listening to them. The sounds were recorded in the patrol car. As a result of the construction of the building and the fact that the majority of the conversations took place in the basement, the recording was poor and contained a lot of static.
 {¶ 4} Once in the store, the confidential informant introduced Detective Raines to Smith, using an alias for the detective. The three individuals went to the basement of the store. Detective Raines purchased $185 worth of marijuana with "drug buy" money. In addition, there was conversation regarding the price of marijuana for future transactions. Smith gave Detective Raines his business card to contact him. The substance sold to Detective Raines was confirmed to be marijuana through testing at Tri-State Laboratories.
 {¶ 5} Detective Raines returned to Smith's store at a later date. Smith told the detective that he "[didn't] do that anymore" and stated he did not know what the detective was talking about. Detective Raines left the store.
 {¶ 6} On a subsequent date, a uniformed officer was sent to Smith's store. The officer informed Smith that the city was looking to sell some computers and he should go to the Niles Police Station to look at them. Smith agreed to go to the police station. After Smith arrived, Detective Raines told him the true reason he was there was to talk about the drugs. Smith was asked to provide information to the police regarding his supplier. In exchange, the officers told him they would make recommendations to the prosecutor's office. Smith did not accept this offer.
 {¶ 7} As a result of the drug transaction, Smith was charged with one count of trafficking in marijuana, a fifth-degree felony. Smith pled not guilty to this offense, and a jury trial was held. The jury found Smith guilty. Thereafter, the trial court sentenced Smith to an eleven-month term of incarceration.
 {¶ 8} Smith raises two assignments of error on appeal. His first assignment of error is:
 {¶ 9} "The trial court erred and abused its discretion by permitting appellee to publish a purported transcript of audio surveillance tapes to the jury, over appellant's repeated objections."
 {¶ 10} "The admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice."[1] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[2]
 {¶ 11} During the trial, when Detective Raines was on direct examination, the state offered a copy of a transcript of the audiotape of the drug transaction. The transcript was prepared to aid the jury in understanding the audiotape, which was offered as an exhibit, admitted, and played in court. This transcript was prepared by an employee of the prosecutor's office. However, Detective Raines reviewed the transcript and made corrections. He stated that he deleted some of the original transcript because it contained text that he could not make out from the audiotape. At trial, Detective Raines testified that the transcript was a fair and accurate transcription of the tape.
 {¶ 12} Defense counsel immediately objected to the admission of the transcript. Counsel argued that he had listened to the tape several times and was unable to make out much of the conversations. The trial court overruled defense counsel's objection. The transcript was admitted by the trial court and published to the jury. However, on two occasions, the trial court instructed the jury that they are to listen to the tape, that the transcript is merely an aid, and if there is a conflict between the tape and the transcript, they should defer to the tape.
 {¶ 13} Courts have held that transcripts may be admissible if they are accurate.[3]
 {¶ 14} The trial court had a duty to ensure the transcripts being published to the jury were an accurate representation of the subject matter of the tape. This is especially true in a situation such as the case sub judice, where defense counsel objected to the accuracy of the transcript.
 {¶ 15} The trial court did not review the transcripts to ensure their accuracy. As such, the trial court abused its discretion. However, for the reasons that follow, we find this error to be harmless beyond a reasonable doubt.
 {¶ 16} The Supreme Court of Ohio has held, "[w]here there are no `material differences' between a tape admitted into evidence and a transcript given to the jury as a listening aid, there is no prejudicial error."[4] On appeal, Smith claims the transcripts are inaccurate. But, Smith does not point to any specific instance of inaccuracy. We have listened to the audiotape and agree that it is of poor quality. However, when comparing the audiotape to the transcript, we are unable to note any material differences between the two.
 {¶ 17} In addition, after the trial court had overruled his objection, defense counsel thoroughly cross-examined Detective Raines about the quality of the tape and the accuracy of the transcript. During this time, specific portions of the audiotape were replayed for the jury. Defense counsel asked Detective Raines to explain these portions and questioned him about what was actually being heard on the tape. Accordingly, defense counsel was permitted to expose any purported inaccuracies and question the officer's explanations of the tape.
 {¶ 18} Finally, we note the Supreme Court of Ohio has held that no prejudicial error occurs when the trial court gives an instruction to the jury that if they should find any differences between the tape and the transcript they are to disregard the transcript and use their own judgment as to what was said on the tape.[5] The trial court gave this instruction on at least two occasions.
 {¶ 19} The trial court abused its discretion by admitting the transcript of the audiotape without making a ruling that it was accurate. However, the court properly instructed the jury and permitted defense counsel to question the witness who helped prepare the transcript. Moreover, as noted infra, Detective Raines testified to the details of the crime in question, including the actual sale of marijuana by Smith. Officer Robbins corroborated this testimony. Accordingly, we conclude this error was harmless beyond a reasonable doubt.
 {¶ 20} Smith's first assignment of error is without merit.
 {¶ 21} Smith's second assignment of error is:
 {¶ 22} "The appellant's convictions are against the manifest weight of the evidence."
 {¶ 23} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 24} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[6]
 {¶ 25} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide.[7]
 {¶ 26} Detective Raines testified that he purchased $185 worth of marijuana from Smith. The jury heard a tape of the transaction. While the tape may have been of poor quality, the jury had the ultimate duty to determine whether they believed the testimony of Detective Raines. Further, the jury heard the testimony of Officer Robbins. While Officer Robbins was not in the building, his testimony indicated that Detective Raines entered the computer business and returned to the patrol car with marijuana.
 {¶ 27} Moreover, the state introduced the bags of marijuana at trial. Detective Raines identified this substance as the drugs he purchased from Smith. In addition, the substance was tested at the crime lab and tested positively for marijuana.
 {¶ 28} Based on the evidence presented at trial, specifically the testimony of Detective Raines and the actual marijuana, we cannot say the jury lost its way or created a manifest miscarriage of justice by finding Smith guilty of trafficking marijuana.
 {¶ 29} Smith's second assignment of error is without merit.
 {¶ 30} The judgment of the trial court is affirmed.
Christley, J., concurs, Grendell, J., concurs in judgment only.
[1] State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citing State v. Issa (2001), 93 Ohio St.3d 49, 64.
[2] (Citations omitted). State v. Adams (1980),62 Ohio St.2d 151, 157.
[3] See, e.g., State v. Waddy (1992), 63 Ohio St.3d 424, 445, and State v. Mason (1998), 82 Ohio St.3d 144, 159.
[4] (Citations omitted.) State v. Waddy,63 Ohio St.3d at 445.
[5] See State v. Mason, 82 Ohio St.3d at 159.
[6] (Citations omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387.
[7] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.