[Cite as *State v. Richardson*, 2026-Ohio-134.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DONNALYN RICHARDSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 BE 0027

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 23 CR 183

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. James R. Wise*, for Defendant-Appellant.

Dated: January 15, 2026

**DICKEY, J.**

{¶1} Appellant, Donnalyn Richardson, appeals from the June 4, 2025 and June 18, 2025 judgments of the Belmont County Court of Common Pleas convicting her for aggravated possession of drugs (methamphetamine) and sentencing her to prison following a jury trial. On appeal, Appellant raises a single assignment of error involving sufficiency of the evidence and manifest weight. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} On July 6, 2023, Appellant was indicted by the Belmont County Grand Jury on two counts: count one, aggravated trafficking in drugs (methamphetamine), a felony of the second degree in violation of R.C. 2925.03(A)(2) and (C)(1)(d); and count two, aggravated possession of drugs (methamphetamine), a felony of the second degree in violation of R.C. 2925.11(A) and (C)(1)(c). Appellant failed to appear at her arraignment and a warrant was issued for her arrest. Appellant was subsequently appointed counsel and pled not guilty.

{¶3} Appellant later agreed to a plea that would have resulted in count one being dismissed and count two being amended to an attempt to commit aggravated possession of drugs (methamphetamine). A hearing was held on May 15, 2025. However, Appellant declined to proceed forward with the plea.

{¶4} A jury trial commenced on June 3, 2025. Appellee, the State of Ohio, moved to dismiss count one and the trial proceeded only on count two. The State presented 27 exhibits and four witnesses: (1) Opal Pierpoint, a guest services representative at the Red Roof Inn in St. Clairsville, Belmont County, Ohio ("Pierpoint"); (2) Logan Havas, a deputy with the Belmont County Sheriff's Office ("Deputy Havas"); (3) Terry Fitch, the general manager at the Red Roof Inn ("Fitch"); and (4) Jason Schwarck, a detective with the Belmont County Sheriff's Office ("Detective Schwarck").

{¶5} Appellant and her husband, Michael Richardson ("Michael") (together "the Richardsons"), shared room 216 at the Red Roof Inn. Guest services representative Pierpoint was aware that the Richardsons began staying at the hotel in November 2022 for roughly one month. Pierpoint found a cat running loose on hotel property. Not

knowing that the cat belonged to the Richardsons, Pierpoint captured it and gave it away to someone via an ad on Facebook.

{¶6} A few days later, Michael asked Pierpoint if she had seen the cat. After learning that Pierpoint had given the cat away, Michael reacted with threats. As a result, Pierpoint called the police. Appellant was arrested when police arrived because there was a warrant, unrelated to this case, out for her arrest. Pierpoint declined to press charges against Michael but asked for him to be removed from the hotel. Officers gave Michael an hour to gather his belongings and leave. Police were called a second time when it appeared to Pierpoint that Michael was threatening her again. Officers arrested Michael when they arrived.

{¶7} Pierpoint authenticated registration slips for the Richardsons' stay at the hotel. (State's Exhibits 13-16). The room was listed in Michael's name and Appellant signed all of the registration slips. (*Id.*) Pierpoint's testimony helped to connect Appellant to the hotel through the fact that their cat was on the premises and through the room itself given that she signed the registration slips.

{¶8} Deputy Havas responded to the call that was received from Pierpoint on December 22, 2022. He testified that Appellant was arrested when police arrived on scene and learned that there was a warrant out for her arrest. Appellant was taken to jail and police returned to the hotel following Pierpoint's second call. Appellant never indicated to him that she was not staying at the hotel. Deputy Havas returned to the hotel during the second call and then arrested Michael. After Michael was released on bail, Deputy Havas escorted him back to the hotel to obtain his belongings and ensured he left the site.

{¶9} Hotel manager Fitch testified that if a guest generally stays past the checkout time of 11:00 a.m., the room is locked out until the hotel staff can determine whether the guest intends to stay. In December 2022, Fitch became aware that the Richardsons had not continued payment on their room and locked them out after 11:00 a.m. Relying on a registration slip, Fitch testified that the Richardsons' stay initially ended on December 2. (State's Exhibit 13). A second registration slip extended their stay to December 6. (State's Exhibit 14). A third registration slip extended their stay to December 9. (State's Exhibit 15). Finally, a fourth registration slip extended their stay

ultimately to December 22.  (State's Exhibit 16).  Although their credit card was billed on December 23, the checkout date was December 22.  The registration slips were signed by Appellant and her driver's license was used to rent the room.

{¶10} Fitch locked the Richardsons out of their room on December 22.  He did not access the property until the next day.  Fitch called law enforcement after accessing the room and finding drugs and several other items.  (State's Exhibits 1-12).  Fitch then led Detective Schwarck into the room when he arrived.

{¶11} Detective Schwarck testified regarding his examination of the room.  He was initially on site to assist with detaining Michael when he was removed from the hotel property.  Detective Schwarck returned to the site in the afternoon when Fitch called.  Immediately upon entering the room, Detective Schwarck saw drug paraphernalia as well as vials containing what he suspected to be methamphetamine.  (State's Exhibits 1-11).  Based on material found in the room, it appeared that a male and a female were staying in the room.  (State's Exhibit 12).  Detective Schwarck learned that the room had been rented by the Richardsons and that they had been staying there for some time.

{¶12} Detective Schwarck confirmed that drugs were also found on a plate in the room.  Vials found in the room also contained methamphetamine.  He noted that where the vials containing drugs were found, there was a pouch that seemed to belong to a female and an airline ticket with Appellant's name on it.  Totals of 6.11 grams, 4.34 grams, 6.01 grams, and 0.33 grams of methamphetamine were found in the room.  Detective Schwarck's body camera video was played for the jury.  (State's Exhibit 17).  Among other things, it showed a pink razor, hair ties or clips, and other material appearing to belong to a female.

{¶13} At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29 which was overruled by the trial court.  The defense rested without presenting any evidence or witnesses.

{¶14} On June 4, 2025, the jury found Appellant guilty of aggravated possession of drugs (methamphetamine) (amount involved equals or exceeds five times the bulk amount – 15 grams – but is less than 50 times the bulk amount – 150 grams).  In her husband's case, Michael was also found guilty of aggravated possession of drugs (methamphetamine) following his January 7, 2025 jury trial and sentenced to prison.

Michael's conviction was affirmed by this court. *State v. Richardson*, 2025-Ohio-3128 (7th Dist.) (Hanni, J., dissenting).

{¶15} On June 18, 2025, the trial court sentenced Appellant to an indefinite prison term of three years (minimum) to four and one-half years (maximum) with 77 days of jail-time credit. The court suspended Appellant's driver's license for one year and imposed up to three years of post-release control.

{¶16} Appellant filed a timely appeal and raises a single assignment of error.

## ASSIGNMENT OF ERROR

**THERE WAS INSUFFICIENT EVIDENCE TO CONVICT THE DEFENDANT OF POSSESSION OF DRUGS AND THE VERDICT OF THE JURY FOR POSSESSION OF DRUGS WAS AGAINST THE WEIGHT OF THE EVIDENCE.**

{¶17} In her sole assignment of error, Appellant argues her conviction for aggravated possession of drugs (methamphetamine) is not supported by sufficient evidence and is against the manifest weight of the evidence.

> "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage

of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. . . .

> The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 2018-Ohio-2766, ¶ 46-48 (7th Dist.).

{¶18} "'[C]ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), quoting *Jenks,* 61 Ohio St.3d 259, paragraph one of the syllabus.

{¶19} For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and further conclude it is supported by sufficient evidence.

{¶20} Appellant takes issue with the guilty finding for aggravated possession of drugs (methamphetamine), a felony of the second degree in violation of R.C. 2925.11(A) and (C)(1)(c), which states:

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> . . .
>
> (C) Whoever violates division (A) of this section is guilty of one of the following:
>
> (1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound,

hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

. . .

(c) If the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree, and the court shall impose as a mandatory prison term a second degree felony mandatory prison term.

R.C. 2925.11(A) and (C)(1)(c).

{¶21} The term "knowingly" is defined in R.C. 2901.22(B) as follows: "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶22} Appellant believes the State failed to prove that she had constructive possession of the drugs.

> Possession can be individual or joint. *State v. Wolery*, 46 Ohio St.2d 316, 332 (1976). In the context of drug offenses, "possession" may be either actual possession or constructive possession. *State v. Smith*, 2023-Ohio-4504, ¶ 55 (7th Dist.). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Wolery* at 329. "It must also be shown that the person was conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982).
>
> A conviction for drug possession can be based on circumstantial evidence of possession. *State v. DeSarro*, 2015-Ohio-5470, ¶ 41 (7th Dist.).

*Richardson*, 2025-Ohio-3128, at ¶ 51-52 (7th Dist.).

Case No. 25 BE 0027

{¶23} As stated, the Richardsons had been staying in a guest room at the Red Roof Inn for roughly one month. Following police calls and arrests, guest services representative Pierpoint authenticated registration slips for the Richardsons' stay at the hotel which were all signed by Appellant. (State's Exhibits 13-16). Pierpoint's testimony helped to connect Appellant to the hotel through the fact that their cat was on the premises and through the room itself given that she signed the registration slips.

{¶24} Deputy Havas responded to the call that was received from Pierpoint on December 22, 2022. He testified that Appellant was arrested when police arrived on scene and learned that there was a warrant out for her arrest. Appellant was taken to jail and police returned to the hotel following Pierpoint's second call. Appellant never indicated to him that she was not staying at the hotel. Deputy Havas returned to the hotel during the second call and then arrested Michael. After Michael was released on bail, Deputy Havas escorted him back to the hotel to obtain his belongings and ensured he left the site.

{¶25} Hotel manager Fitch testified that if a guest generally stays past the checkout time of 11:00 a.m., the room is locked out until the hotel staff can determine whether the guest intends to stay. In December 2022, Fitch became aware that the Richardsons had not continued payment on their room and locked them out after 11:00 a.m. Relying on a registration slip, Fitch testified that the Richardsons' stay initially ended on December 2. (State's Exhibit 13). A second registration slip extended their stay to December 6. (State's Exhibit 14). A third registration slip extended their stay to December 9. (State's Exhibit 15). Finally, a fourth registration slip extended their stay ultimately to December 22. (State's Exhibit 16). Although their credit card was billed on December 23, the checkout date was December 22. The registration slips were signed by Appellant and her driver's license was used to rent the room.

{¶26} Fitch locked the Richardsons out of their room on December 22. He did not access the property until the next day. Fitch called law enforcement after accessing the room and finding drugs and several other items. (State's Exhibits 1-12). Fitch then led Detective Schwarck into the room when he arrived.

{¶27} Detective Schwarck testified regarding his examination of the room. He was initially on site to assist with detaining Michael when he was removed from the hotel

property. Detective Schwarck returned to the site in the afternoon when Fitch called. Immediately upon entering the room, Detective Schwarck saw drug paraphernalia as well as vials containing what he suspected to be methamphetamine. (State's Exhibits 1-11). Based on material found in the room, it appeared that a male and a female were staying in the room. (State's Exhibit 12). Detective Schwarck learned that the Richardsons rented the room and had been staying there for some time.

{¶28} Detective Schwarck confirmed that drugs were also found on a plate in the room. Vials found in the room also contained methamphetamine. He noted that where the vials containing drugs were found, there was a pouch that seemed to belong to a female and an airline ticket with Appellant's name on it. Totals of 6.11 grams, 4.34 grams, 6.01 grams, and 0.33 grams of methamphetamine were found in the room. Detective Schwarck's body camera video was played for the jury. (State's Exhibit 17). Among other things, it showed a pink razor, hair ties or clips, and other material appearing to belong to a female.

{¶29} Based on the facts presented and the record before us, the State proved that Appellant had constructive possession of the drugs (methamphetamine). *See Richardson*, 2025-Ohio-3128, at ¶ 51-52 (7th Dist.). The evidence establishes that the location where the drugs were found was within Appellant's dominion and control. The evidence reveals the hotel room was listed in Michael's name and Appellant signed all of the registration slips. (State's Exhibits 13-16). The couple resided in the room for roughly one month and Appellant exercised dominion and control over possessions in the room. There was no evidence presented at trial to support that the drugs were planted in the room. Appellant was shown to have had dominion and control of the room before hotel manager Fitch entered it and the manager testified that no one could have entered after Appellant was excluded from the room. As this court found in Michael's case, "viewing the evidence in a light most favorable to the state, a reasonable fact finder could conclude [Michael] and his wife [Appellant] jointly possessed the drugs." *Richardson* at ¶ 53.

{¶30} Pursuant to *Jenks,* 61 Ohio St.3d 259, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of aggravated possession of drugs (methamphetamine) were proven. Thus, the trial court did not err in overruling Appellant's Crim.R. 29 motion.

{¶31} Also, the jury chose to believe the State's witnesses. *DeHass,* 10 Ohio St.2d 230, paragraph one of the syllabus. Based on the evidence presented, as previously stated, the jury did not clearly lose its way in finding Appellant guilty of aggravated possession of drugs (methamphetamine). *Thompkins,* 78 Ohio St.3d at 387.

## CONCLUSION

{¶32} For the foregoing reasons, Appellant's sole assignment of error is not well-taken. The June 4, 2025 and June 18, 2025 judgments of the Belmont County Court of Common Pleas convicting Appellant for aggravated possession of drugs (methamphetamine) and sentencing her to prison following a jury trial are affirmed.


Waite, P.J., concurs.

Hanni, J., concurs.

––––––––––––––––––––

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgments of the Court of Common Pleas of Belmont County, Ohio, are affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**